NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                            :
KEVIN DURHAM,                                :
                                                            :
                          Plaintiff,            :        Civil No. 08-1120 (RBK/AMD)
                                                            :
             v.                                    :        **OPINION**
                                                            :
ATLANTIC CITY ELECTRIC                :
COMPANY,                                        :
                                                            :
                          Defendant.          :
_____:

**KUGLER**, United States District Judge:

This is a disability employment discrimination dispute.  Plaintiff Kevin Durham claims

that his employer, Defendant Atlantic City Electric Company ("ACE"), discriminated against

him because he has bipolar disorder.  Plaintiff asserts claims under the Americans with

Disabilities Act ("ADA"), the New Jersey Law Against Discrimination ("NJLAD"), the Family

Medical Leave Act ("FMLA"), and the New Jersey and United States constitutions.  He also

asserts a tort claim for intentional infliction of emotional distress.  This matter comes before the

Court on Defendant's motion for summary judgement dismissing Plaintiff's Amended Complaint

in its entirety.  Because Plaintiff's claims under the ADA, NJLAD, and FMLA are time-barred,

and because Plaintiff has expressly abandoned his remaining claims, the Court grants

Defendant's motion for summary judgment.

1

## I.    FACTUAL BACKGROUND

Plaintiff began working for ACE in 1984.  From 1993 until November 2004, he worked as a dispatcher.  Dispatchers are responsible for fielding calls regarding service emergencies. Plaintiff testified that the dispatcher position is inherently "hectic."  (Durham Dep. 21:8-13). According to Plaintiff, "[y]ou're multi-tasking all the time, deciding what becomes an emergency at the drop of a hat" and then dispatching crews to emergency locations as appropriate.  (Durham Dep. 19:21-23; 21:9-13).  Dispatchers work rotating twelve-hour shifts.  They work from 6:00 a.m. to 6:00 p.m. for several days and then the opposite shift for several days.  Dispatchers were also rotated through the "meter desk."  The meter desk was a function of dispatch that handled only the company's meter readers.  Dispatchers assigned to the meter desk worked regular eight-hour shifts instead of their usual twelve-hour shifts.

In November 2004, Plaintiff suffered a "breakdown."  (Durham Dep. 44:1-25).  He took leave from work as provided by the FMLA.  Plaintiff admits that ACE gave him all the medical leave that he requested.  (Durham Dep. 45:1-14).  Plaintiff's trouble with ACE began on or about January 6, 2005 when he requested to return to work.  He presented ACE with a note from his psychiatrist, stating:  "Kevin Durham is under my care.  For medical reasons he is unable to work changing shifts or twelve hour shifts.  He is able to work eight hour day shifts.  This is a permanent restriction."  (Def. Ex. D).  Plaintiff's psychiatrist later supplemented her note with an addendum stating:  "Research has shown that an erratic sleep pattern and insufficient sleep can seriously aggravate certain mood disorders.  Mr. Durham has a mood disorder and must have regular and sufficient sleep.  Therefore he should not work changing or long shifts."  (Id.).

Plaintiff testified that notwithstanding his psychiatrist's notes, ACE demanded that a

2

company doctor evaluate him before ACE would permit him to return to work.  (Durham Dep. 33:23-34:4).  ACE does not deny this, but contends that its medical examination was intended for two purposes: (1) to determine whether Plaintiff was capable of working as a dispatcher; and (2) to evaluate whether Plaintiff was entitled to job and salary protection under the operative collective bargaining agreement, which provides that an employee with twenty or more years of service who becomes permanently disabled will be reassigned to work he is capable of performing but retain the same wages he had before being disabled.  (Bleazard Dep. 14:7-19). Plaintiff visited the company doctor sometime in February 2005.  (Durham Dep. 25:12-28:14). The company doctor determined that Plaintiff was unable to work as a dispatcher.  Specifically, the doctor determined that the dispatcher position was "too stressful" for Plaintiff.  (Bleazard Dep. 34:6-16).  Plaintiff contested that determination and claimed that his only restriction was that he could not work twelve-hour rotating shifts.  (Durham Dep. 47:24-48:9).

When Plaintiff ultimately returned to work sometime in January or February 2005, he was immediately assigned to regular eight-hour shifts on the meter desk.[1]  ACE contends that it told Plaintiff that the meter-desk assignment was temporary until ACE could identify a permanent position that would be appropriate in light of his stated restrictions and the company's determination that the dispatcher position was too stressful.  (Bleazard Dep. 21:25-22:18). Plaintiff does not recall that ACE told him this, but he does not deny that it happened.  (Durham

---

[1] The evidence is unclear as to when Plaintiff actually returned to work.  At one point, Plaintiff testified that he returned sometime in January 2005.  (Durham Dep. 45:19-21).  At another point, he testified that ACE did not allow him to return to work until after he was examined by the company's doctor in February 2005.  (Durham Dep. 33:23-34:4).  A letter from Plaintiff's attorney in May 2005 also suggests that he did not return until February 2005, (Def. Ex. G), and a February 23, 2005 memorandum from ACE states that he was assigned to a new position on that date, (Def. Ex. H).  The Charge of Discrimination that Plaintiff filed with the New Jersey Division of Civil Rights ("NJDCR") states that he returned to work on February 22, 2005.  (Def. Ex. K).  Nowhere does Plaintiff contend that he returned to work any later than February 23, 2005.

46:18-47:2).

On February 23, 2005, ACE met with Plaintiff and informed him that he was being moved from the meter desk to Helper Specialist, a non-dispatch position, because the company had determined that he was "unable to perform certain aspects of his dispatcher position due to a permanent partial physical disability." (Def. Ex. H). ACE also told Plaintiff during that interview that he was entitled to job and salary protection under the collective bargaining agreement. (Id.). ACE therefore kept Plaintiff's pay equal to what he received as a dispatcher. The Helper Specialist position had regular eight-hour shifts, but it was a labor position that involved on-the-job driving from time to time.

In early March 2005, while Plaintiff was working as a Helper Specialist, he presented ACE with a note from his doctor stating: "For medical reasons and due to the current stress level, Mr. Durham is unable to drive as part of his work. This is a temporary restriction." (Def. Ex. I). On April 25, 2005, Plaintiff was asked to drive and pick up company supplies. (Durham Dep. 80:9-83:22). He refused to do so based on his doctor's note, and his supervisor issued a write-up for insubordination. (Id.). ACE subsequently rescinded the write-up. (Id.).

There is a dispute as to whether it was necessary for ACE to move Plaintiff from his dispatcher position and whether ACE engaged in an interactive process to determine the best accommodation before assigning him to the Helper Specialist position. Regarding the interactive process, Plaintiff claims that he told ACE that he was able to work as a dispatcher if he was assigned regular eight-hour shifts, and that he specifically requested that ACE permanently assign him to an eight-hour dispatch position. (Durham Dep. 20:4-13; 26:4-28:14). According to Plaintiff, ACE made its determination unilaterally without engaging his request in good faith.

4

(Durham Dep. 19:24-21:4).

The company claims that the meter desk was being eliminated as an independent eight-hour position and that it was not required to create a position solely for Plaintiff.  Plaintiff responds that the meter-desk position was never eliminated because, according to testimony by Mr. Bleazard, an ACE human resource partner, dispatchers were still performing the meter-desk function as of August 2009.  (Bleazard Dep. 26:7-27:13).  Plaintiff also contends that dispatchers could work eight-hour shifts as "planners."  He asserts that a reasonable accommodation would have been to assign him to the meter desk or as a planner, rather than transfer him to a Helper Specialist position.  ACE responds that there were no available planner positions and it was not at liberty to remove another employee from a dispatch position because those positions are protected under the collective bargaining agreement.  In any event, Plaintiff does not deny that on February 23, 2005, ACE informed him of its decision to deny his request for a permanent dispatch position and assign him to a Helper Specialist position.[2]  (Durham Dep. 56:16-61:7).

Plaintiff remained in his position as a Helper Specialist until November 2005.  During that time, Plaintiff claims that he repeated his request that he be returned to a dispatcher position.  His attorney, Patricia Barasch, also wrote a letter to ACE in May 2005, outlining various factual and legal grievances regarding the company's handling of Plaintiff's situation.  (Def. Ex. G).  In that letter, Ms. Barasch expressed concern that the company's assignment of Plaintiff to a Helper Specialist position was not a reasonable accommodation and that the company was not engaging Plaintiff in an interactive process to identify a reasonable accommodation.  Ms. Barasch also

---

[2] ACE recorded its February 23, 2005 meeting with Plaintiff in a memorandum.  Plaintiff admitted that the memorandum accurately recorded the information that ACE conveyed to him on February 23, 2005.  (Durham Dep. 59:15-60:13).

expressed concern that ACE violated Plaintiff's rights under the FMLA by requiring him to

submit to an examination by the company's doctor.

On November 21, 2005, ACE conducted an interview with Plaintiff regarding his

employment conditions.  At that interview, the company informed Plaintiff that:

> Because [he] is unable to perform the essential functions and
> normal duties of the Dispatcher and Helper-Specialist positions to
> which he has most recently been assigned due to medical
> conditions, some of which may be a "disability" under the [ADA]
> and the [NJLAD,] the Company will conclude the interactive
> process in which it has engaged with [Plaintiff] and the Union
> since [Plaintiff] returned to work . . . by placing [Plaintiff] in the
> only vacant position, Administrative Assistant II, the Company
> currently has . . . for which [Plaintiff] is likely to be qualified . . . .

(Def. Ex. J).  ACE informed Plaintiff that his new position would take effect on November 28,

2005.  (Id.).  It also told Plaintiff that:  "Effective January 1, 2006, [Plaintiff's] rate of pay will be

set by the [c]ompany commensurate with the rate of pay for the Administrative Assistant II

position in which he is being placed."[3]  (Id.).

During the interview, ACE also told Plaintiff that the collective bargaining agreement did

not cover the Administrative Assistant II position.  (Def. Ex. J).  ACE stated that it had made an

error in determining Plaintiff's eligibility for job and salary protection under the collective

bargaining agreement.  (Id.).  According to ACE, Plaintiff was not eligible for those protections

because the collective bargaining agreement provides protection only for physical or partial

physical disabilities, and bipolar disorder is a nonphysical disability.  (Id.).  Additionally, the

---

[3] The substance of the November 21, 2005, interview was recorded by ACE in a memorandum.  With two
exceptions, Plaintiff does not contest the authenticity or content of the memorandum.  (Durham Dep. 86:21-88:7).
Plaintiff does contest that his pay was actually changed on January 1, 2006, and that his new position actually took
effect on November 28, 2005.  An email to Plaintiff dated November 21, 2005 states that because of internal policies
regarding pay periods, Plaintiff's new pay-rate was to take effect on January 9, 2006, and that his new position was
to take effect on November 24, 2005.  (Def. Reply Ex. D).

company determined that Plaintiff was not eligible because he did not have twenty years of qualifying experience.  (Id.).  Plaintiff testified that he grieved his Administrative Assistant II assignment through the union, but the grievance was ultimately denied.  (Durham Dep. 88:13-92:5).

On November 11, 2005, prior to the company's interview with Plaintiff,  ACE sent a letter to Plaintiff's attorney giving her advance notice of the company's decision to deny Plaintiff's request for an eight-hour dispatch position, withdraw his pay and job protection, and transfer him to a nonunion position.  (Pl. Ex. 7).  That letter also explained: "The [c]ompany regrets having provided Mr. Durham inaccurate information about this eligibility for placement and pay protection, and therefore, the [c]ompany will continue to pay Mr. Durham for work he performs through the end of the year 2005 at this current rate of pay."  (Id.).

Plaintiff does not offer any evidence regarding any adverse employment actions by ACE following his transfer in November 2005 and his related reduction in pay in January 2006.  However, Plaintiff does submit evidence that in December 2006, Karen Smith retired from her planner position, which was a regular eight-hour shift position.  (Cramer Dep. 26:7-27:4).  Plaintiff submits no evidence that he requested Ms. Smith's position when she retired.  He nevertheless seems to suggest that Ms. Smith's retirement is relevant because ACE had a continuing obligation to give him an eight-hour dispatch position and by not giving him Ms. Smith's position, ACE engaged in a continuous course of discriminatory conduct through December 2006.

On October 24, 2006, more than 336 days after ACE notified Plaintiff that it had concluded the interactive process, determined that he was not fit to work as a dispatcher,

7

withdrawn his job and pay protection, and transferred him to a nonunion position, Plaintiff filed a

Charge of Discrimination with the NJDCR.  (Def. Ex. K).  The Charge claims that ACE

discriminated against Plaintiff by forcing him out of his dispatch job and placing him in a "non-

union position with a substantial pay cut."  (Id.).  The Charge recounts that ACE made Plaintiff

visit the company doctor upon his return from FMLA leave, that ACE did not allow him to work

eight-hour shifts as a dispatcher and required him to take a position as a Helper Specialist in early

2005, and that ACE ultimately placed him in a non-union Administrative Assistant II position in

November 2005 with a pay cut "effective January 1, 2006."  (Id.).  Based on the same factual

allegations, Plaintiff filed his original Complaint in this matter on March 3, 2008.[4]

## II.    LEGAL STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make

credibility determinations or engage in any weighing of the evidence; instead, the nonmoving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at

255).

"[T]he party moving for summary judgment under Fed. R. Civ. P. 56(c) bears the burden

---

[4] Neither party provides any evidence as to the substance or timing of the NJDCR's conclusions regarding its
investigation of Plaintiff's Charge of Discrimination.

of demonstrating the absence of any genuine issues of material fact." Aman v. Cort Furniture

Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either

by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by

"'showing' - that is, pointing out to the district court - that there is an absence of evidence to

support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the

moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific

facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not

so respond, summary judgment should, if appropriate, be entered against that party." Id.

## III.   ANALYSIS

### A.   Retaliation and Failure to Accommodate (ADA)

The ADA prohibits unlawful discrimination against employees on the basis of disability.

See 42 U.S.C. § 12112(a).   An employee may bring a claim under the ADA for discriminatory

conduct by an employer or because an employer retaliated against the employee for asserting

ADA rights.  See Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir.

2009) (stating elements for ADA employment discrimination); Shaner v. Synthes, 204 F.3d 494,

501-02 (3d Cir. 2000) (stating elements for ADA retaliation claim).  Plaintiff asserts both types

of claims.

A plaintiff alleging either type of claim under the ADA must file a Charge of

Discrimination with the EEOC within 180 days of the alleged unlawful practice, or within 300

days if filed with the NJDCR.  See 29 U.S.C. § 626(d)(2) (providing 180 days for EEOC); 42

U.S.C. § 2000e-5 (providing 300 days for state agency); Omogbehin v. Dimensions Int'l, Inc.,

No. 08-3939, 2009 U.S. Dist. LEXIS 63222, at *9 (D.N.J. July 22, 2009) (explaining that filing

with NJDCR constitutes filing with EEOC for timing purposes).  A plaintiff must file a claim in court within ninety days of receiving a right-to-sue letter from the EEOC or state agency.[5]  See 42 U.S.C. § 2000e-5(f)(1); Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999) (explaining that Title VII procedures set out in 42 U.S.C. § 2000e-5 apply to ADA claims by operation of 42 U.S.C. § 12117).  These filing requirements are treated as statutes of limitations.  Zipes v. Trans World Airways, Inc., 455 U.S. 385, 393 (1982).

In determining whether the applicable statute of limitation begins to run under the ADA, a distinction exists between continuing violations by an employer and discrete unlawful acts.  See AMTRAK v. Morgan, 536 U.S. 101, 110-13 (2002) (discussing the distinction under Title VII standard applied to ADA).  "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations  period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  Brenner v. Local 514, United Bhd. of Carpenters of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).  However, when an individual alleges discrete acts of discrimination or retaliation, "such as termination, failure to promote, [or] denial of transfer," each such "incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  Morgan, 536 U.S. at 113.  For statute of limitations purposes, a "discrete retaliatory or discriminatory act occur[s] on the

_____

[5] As noted earlier, neither party provides any evidence as to the substance or timing of the NJDCR's conclusions regarding Plaintiff's Charge of Discrimination.  There is a significant lapse in time between when Plaintiff filed his NJDCR Charge (October 2006) and when he filed his Complaint in this Court (March 2008).  See 42 U.S.C. § 2000e-5(f)(1) (stating that employee can demand a right-to-sue letter 180 days after submitting Charge of Discrimination).  The Court is unable to determine whether Plaintiff complied with 42 U.S.C. § 2000e-5(f)(1)'s ninety-day filing requirement.  However, this missing evidence is inconsequential, because, as discussed below, Plaintiff failed to file his NJDCR Charge within 300 days of ACE's alleged misconduct.

day that it happens." Id. at 110.  Denial or refusal of an accommodation is a discrete act for

statute of limitations purposes.  McDonald v. Pa. Office of Attorney Gen., No. 08-658, 2010 U.S.

Dist. LEXIS 46019, at *24 (W.D. Pa. May 10, 2010).

Applying these principles, Plaintiff's ADA retaliation and failure-to-accommodate claims

are time-barred.  Plaintiff does not deny that on November 21, 2005, ACE met with him and

communicated in person and in writing that ACE was denying his request for an eight-hour

dispatch position, transferring him to an Administrative Assistant II position, withdrawing his job

and pay protection, and recalculating his new pay effective January 1, 2006.  Importantly, ACE

also explained to Plaintiff that the November 21, 2005 meeting finally concluded the "interactive

process" for identifying an appropriate accommodation.  (Def. Ex. J).  This was a discrete act by

ACE.  Plaintiff was therefore required to file his discrimination charge with the NJDCR within

300 days after November 21, 2005.  Plaintiff filed his charge on October 24, 2006, more than a

month after that deadline.[6]

Plaintiff nevertheless asserts three arguments in defense of his claims, none of which is

availing.  First, he argues that his reduction in pay constitutes a separate unlawful act because it

did not take effect until January 2009.  Plaintiff contends that he cannot be attributed with

knowledge that his pay would decrease until the change actually took effect because ACE

initially told him only that his new pay would be set "commensurate with the rate of pay for the

Administrative Assistant II position."  (Def. Ex. J).

---

[6] Plaintiff's tardiness in filing his Charge of Discrimination is particularly curious in light of the fact that on November 11, 2005, ACE sent Plaintiff's attorney a letter clearly explaining ACE's decisions regarding his employment status.  Thus, both Plaintiff and his attorney received actual notice of ACE's allegedly discriminatory conduct more than 336 days before he filed his Charge of Discrimination claiming that ACE's decisions were unlawful.

That argument fails.  The Supreme Court has specifically held that in determining when the limitations period begins to run, the "'proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.'"  Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980) (quoting Abramson v. Univ. of Haw., 594 F.2d 202, 209 (1979)).  In Ricks, the plaintiff was a professor at a public university who alleged that the university had denied him tenure for discriminatory reasons.  Id. at 257.  When the professor's contract expired a year later and he was not rehired by the university, he filed a discrimination charge with the EEOC.  Id.  The Court held that the charge was untimely because the limitations period began to run when the university made its tenure decision.  Id. at 257-58.  The Court held that the plaintiff's claims could not be predicated on the university's non-renewal of his employment contract because the non-renewal was simply an "inevitable consequence" of the university's alleged discriminatory tenure decision.  Id. at 258 ("It is simply insufficient for Ricks to allege that his termination 'gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination.'") (quoting Abramson, 594, F.2d at 209); see Vega v. Cruz-Burgos, 537 F.3d 14, 20 (1st Cir. 2008) (holding that statute of limitations runs when plaintiff "knows, or has reason to know of the injury . . . and not at the point the harmful consequences are felt.").

The Court's holding in Ricks governs this case.  ACE clearly communicated to Plaintiff in November 2005 that it had decided to withdraw his pay protection and transfer him to a position that was not covered by the collective bargaining agreement.  Although the reduction in pay did not take effect until January 2006, it was ACE's actual decision to remove Plaintiff's pay protection and transfer him to a non-union position that constituted a discrete act.

Moreover, Plaintiff's counsel's suggestion that in November 2005 Plaintiff did not know that his pay would decrease in January 2006 is fallacious.  The evidence requires the opposite conclusion.  The obvious and necessary suggestion of ACE's communications in November 2005 was that Plaintiff was being demoted to a non-union position with reduced pay.  Plaintiff does not identify any testimony supporting the conclusion that after the November 21, 2005 interview he was unaware that his pay was going to be reduced.   Additionally, ACE clearly told Plaintiff's counsel in November 2005 that ACE would maintain Plaintiff at his union-level pay until the end of the year because ACE felt responsible for erroneously determining that he was entitled to pay protection.  The inescapable conclusion from that concession is that ACE was going to reduce Plaintiff's pay in January 2006.  As in Ricks, Plaintiff's actual reduction in pay was the inevitable consequence of ACE's allegedly unlawful decision to transfer Plaintiff to a non-union position. See Ricks,  449 U.S. at 258-57 ("It appears that termination of employment at [the university] is a delayed, but inevitable, consequence of the denial of tenure.").

Plaintiff's second argument in support of the timeliness of his claims is that ACE committed a separate discrete act of discrimination when it failed to give him Ms. Smith's eight-hour dispatcher position upon her retirement in December 2006.  Although an employer's denial of an employee's request for an accommodation is a separate discrete act that accrues on the date it occurs, Cruz v. Piccari Press, 521 F.Supp.2d 424, 433 (E.D. Pa. 2007), Plaintiff does not present any evidence that he actually requested Ms. Smith's position when she retired.  Because ACE clearly communicated in November 2005 that it had concluded its investigation for a suitable accommodation and was denying Plaintiff's request for an eight-hour dispatch position, ACE did not have an obligation to sua sponte revisit its original accommodation decision.  See

13

Ricks, 449 U.S. at 257 ("The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past.").

However, even if Plaintiff had specifically requested that ACE give him Ms. Smith's position, ACE clearly communicated to Plaintiff in November 2005 that ACE was assigning him to an Administrative Assistant II position because it believed that he could not perform the essential functions of the dispatcher position.[7] Plaintiff's persistence in claiming that ACE should give him a dispatch position amounts to nothing more than a request that ACE reconsider its November 2005 determination that he could not perform that position's essential functions. Even if the company's original determination violated the ADA, Plaintiff's time to challenge that determination began to run in November 2005. Plaintiff cannot resurrect that claim by again asserting, more than a year after ACE's original determination, that he can perform as a dispatcher.[8] See Ricks, 449 U.S. at 261 ("Mere requests to reconsider, however, cannot extend the limitations periods applicable to the civil rights laws."); Conner v. Reckitt & Colman, 84 F.3d 1100, 1102 (8th Cir. 1996) (finding that employer's failure to consider repeated requests for accommodation after making unlawful employment decision was not discrete discriminatory act but "merely a consequence of [a prior] discriminatory act.").

Plaintiff's third argument seems to be that ACE's failure to give him an eight-hour

---

[7] ACE told Plaintiff at the November 21, 2005 interview that he was being moved to an Administrative Assistant II position "[b]ecause [Plaintiff] is unable to perform the essential functions and normal duties of the Dispatcher and Helper-Specialist positions."

[8] Significantly, Plaintiff does not suggest or present any evidence that he was entitled to Ms. Smith's position because of a change in his condition relevant to the duties of a dispatcher. Once ACE determined that Plaintiff's condition prohibited him from performing the essential functions of a dispatcher, the statute of limitations began to run regarding Plaintiff's ability to challenge that determination as discriminatory.

14

dispatch position constitutes a continuing violation of the company's obligation to engage in an interactive process to find Plaintiff a suitable accommodation.  This argument also fails.  The continuing violation doctrine tolls the statute of limitations in a discrimination case if an employee can demonstrate that the employer engaged in "an ongoing practice or pattern of discrimination."  West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995).  However, various "courts have specifically held that an employer's rejection of an employee's proposed accommodation is the type of discrete act that must be the subject of a complaint to the EEOC [or state agency] within the statutory period."  McDonald, 2010 U.S. Dist. LEXIS 46019, at *24 (citing Sessa v. Sears Roebuck & Co., No. 03-547, 2004 U.S. Dist. LEXIS 20067 (E.D. Pa. Sept. 29, 2004); Elmenayer v, ABF Freight Sys., Inc., 318 F.3d 130, 134-35 (2d Cir. 2003); Cherosky v. Henderson, 330 F.3d 1243, 1247 (9th Cir. 2003)).

Plaintiff believes, perhaps rightly, that he was entitled to accommodation as an eight-hour dispatcher.  However, on November 21, 2005, ACE unequivocally told Plaintiff that it had conclusively determined that he could not perform the essential functions of dispatcher.  That was a discrete act.  Plaintiff presents no evidence to establish that ACE engaged in an ongoing practice or pattern of discrimination subsequent to that discrete act.  Indeed, Plaintiff does not allege that ACE took any action against him after it reassigned him in November 2005.

Moreover, Plaintiff cannot successfully argue that a denial of his requested accommodation coupled with his continued employment constitutes a continuing violation.  Such a result would nullify the statute of limitations in all failure-to-accommodate claims where the employer denies an employee's accommodation request and the employee remains with the company.  See Quasius v. Schwan Food Co., No. 08-575, 2008 U.S. Dist. LEXIS 92639, at *13

15

(D. Minn. Nov. 14, 2008) ("The existence of an on-going effect [of an unlawful discrete act] on an employee does not convert a discrete act into a continuing violation."); West v. Ill. State Bd. of Educ., No. 07-2994, 2007 U.S. Dist. LEXIS 85716, at *4 (N.D. Ill. Nov. 20, 2007) (holding that the continuing violation doctrine does not toll the statute of limitations when plaintiff knew of refusals to accommodate before the statute of limitations had run).

Plaintiff filed his NJDCR Charge of Discrimination more than 300 days after ACE's alleged unlawful conduct. Plaintiff's ADA claims are therefore time-barred.

**B.     Retaliation and Failure to Accommodate (NJLAD)**

Like the ADA, the NJLAD prohibits unlawful discrimination against employees on the basis of disability. See N.J.S.A. 13:13-2.5(b). An employee may bring a claim under the NJLAD for discriminatory conduct by an employer or because an employer retaliated against the employee for asserting NJLAD rights. See Muller v. Exxon Research & Eng'g Co., 345 N.J. Super. 595 (App. Div. 2001) (stating elements for NJLAD employment discrimination claim); Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252 (App. Div. 1996) (stating elements for NJLAD retaliation claim). Plaintiff asserts both types of NJLAD claims.

Unlike the ADA, the NJLAD does not require a plaintiff to exhaust administrative remedies before filing a complaint in court. Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 654 (1996). A plaintiff may pursue retaliation or failure-to-accommodate claims directly in court if he or she files a complaint within two years of the alleged unlawful conduct. See Montells v. Haynes, 133 N.J. 282, 293 (1993) (holding that two-year statute of limitations for personal injury claims applies to all NJLAD claims). However, if a plaintiff pursues an administrative remedy, he or she may not simultaneously pursue a claim in court, and the two-

16

year statute of limitations is not tolled by the administrative proceeding.  <u>Omogbehin v. Dimensions Int'l, Inc.</u>, No. 08-3939, 2009 U.S. Dist. LEXIS 63222, at *8 (D.N.J. July 22, 2009).

The New Jersey Supreme Court has adopted the federal framework for determining when a NJLAD claim accrues.  <u>See Roa v. Roa</u>, 200 N.J. 555, 568 (2010); <u>Shepherd v. Hunterdon Dev. Ctr.</u>, 174 N.J. 1, 21(2002).  Discrete acts of discrimination or retaliation accrue "on the day on which those individual acts occurred."  <u>Shepherd</u>, 174 N.J. at 21.  Continuing violations accrue "on the date on which the last act occurred."  <u>Id.</u>

As noted above, ACE unequivocally informed Plaintiff on November 21, 2005, that it was denying his request for an accommodation as an eight-hour dispatcher, removing his pay and job protection, and transferring him to a non-union position.  Plaintiff's claims therefore accrued no later than November 21, 2005.  Plaintiff filed his original Complaint in this matter in March 2008, after the two-year limitations period expired.  Moreover, because New Jersey applies the federal framework regarding accrual of NJLAD claims, this Court finds that Plaintiff's three arguments in defense of the timeliness of his ADA claims discussed above are equally unavailing regarding his NJLAD claims.[9]

---

[9] The New Jersey Supreme Court recently addressed the relationship between the ADA and NJLAD in the context of failure-to-accommodate claims.  <u>See Victor v. State</u>, 2010 N.J. LEXIS 834 (N.J. Sept. 13, 2010).  The court noted that although the NJLAD generally follows the ADA, the NJLAD has its own rich history of protecting employees from discrimination.  <u>Id.</u> at *28.  The court suggested that while the ADA seems to require that an employee suffer an adverse employment action before bringing a failure-to-accommodate claim, the NJLAD may not impose that requirement.  <u>Id.</u> at *69-71.  However, the court itself noted that this comment was dicta, and the court did not address the issue of when the statute of limitations for such a modified failure-to-accommodate claim would accrue.  <u>Id.</u> at *72 ("we are constrained to refrain from resolving today the question of whether a failure to accommodate unaccompanied by an adverse employment consequence may be actionable.").  In any event, <u>Victor</u> is irrelevant here because Plaintiff clearly suffered a discrete adverse employment decision on November 21, 2005.  Under New Jersey law, the statute of limitations began to run on that day.  <u>See Shepherd</u>, 174 N.J. at 21.

C.      FMLA Claims

The FMLA protects employees' rights to family and medical leave from their jobs.  See

Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401-02 (3d Cir. 2007) (explaining rights

under FMLA).  A cause of action exists where an employer engages in activity designed to

interfere with an employee's FMLA rights.  See 29 U.S.C. § 2615(a)(1); Callison v. City of

Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005).  It also prohibits retaliation against individuals

who take FMLA leave or engage in activity protected by the FMLA.  See 29 U.S.C. § 2615(a)(2);

Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146-47 n.9 (3d Cir. 2004).  Plaintiff

seems to assert both types of claims.

Unlike the ADA, the FMLA does not require a plaintiff to exhaust administrative

remedies before filing a claim in court.  See 29 U.S.C. § 2617(a).  The FMLA imposes a two-

year limitations period for non-willful violations, 29 U.S.C. § 2617(c)(1), and a three-year

limitations period for willful violations, 29 U.S.C. § 2617(c)(2).  To prove "willfulness" under

the FMLA, a plaintiff must show that "the employer either knew or showed reckless disregard for

the matter of whether its conduct was prohibited by the statute."  Bass v. Potter, 522 F.3d 1098,

1103 (10th Cir. 2008) (applying standard set out in McLaughlin v. Richland Shoe Co., 486 U.S.

128 (1988), to FMLA claims).  The FMLA limitations periods run from "the date of the last

event constituting the alleged violation for which the action is brought."  29 U.S.C. §§

2617(c)(1)-(2).  Filing a Charge of Discrimination with the EEOC or a comparable state agency

does not toll the FMLA statute of limitations.  See Shannon v. City of Philadelphia, No. 98-5277,

1999 U.S. Dist. LEXIS 2428, at *12 (E.D. Pa. Mar. 5, 1999) (citing Johnson v. Ry. Express

Agency, 421 U.S. 454, 465-67 (1975)).

Plaintiff does not allege that he was denied adequate FMLA leave.  Rather, he claims that ACE interfered with his FMLA rights by frustrating his return to work and retaliating against him.  Plaintiff testified that notwithstanding his doctor's note saying that he was fit to return to work under certain conditions, in February 2005 ACE improperly required him to be examined by the company's doctor before allowing him to return.  Although relevant regulations likely prohibit that sort of interference with FMLA rights, see 29 C.F.R. §§ 825.300, ACE's alleged interference occurred more than three years before Plaintiff filed his original Complaint on March 3, 2008.  Thus, even if Plaintiff could prove that this conduct by ACE constituted retaliation or willful interference with his FMLA rights, those claims would be time-barred.  See 29 U.S.C. § 2617(c)(2) (imposing three-year limitations period for willful FMLA violations).

Plaintiff's Counsel also suggests in its brief that ACE's November 21, 2005 decisions regarding Plaintiff's employment status were somehow retaliatory for Plaintiff taking FMLA leave.  This claim is barred by the FMLA's two-year limitations period for nonwillful violations.  However, it may be within the three-year limitations period if Plaintiff can show that ACE willfully retaliated against him for taking FMLA leave.

In order to make out a prima facie FMLA retaliation claim, a plaintiff must satisfy three elements:  (1) he asserted FMLA rights, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave.  Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508-09 (3d Cir. 2009).  Plaintiff cannot satisfy the third element of the prima facie case.  Plaintiff offers no evidence from which a reasonable jury could conclude that ACE's conduct on November 21, 2005 was "causally related to" his FMLA leave.  Although there may be some evidence that ACE's actions on November 21, 2005 were related to his disability, there is no

19

evidence that ACE demoted Plaintiff because he took FMLA leave.  Indeed, the nine-month gap between Plaintiff's return from FMLA leave and ACE's adverse employment decision is circumstantial evidence that ACE's conduct was not related to his FMLA leave.  See Pressley v. Johnson, 268 Fed. App'x 181, 185 (3d Cir. 2008) ("for an inference of retaliation to be plausible, there must not be a significant gap in time between the exercise of protected activity and the purported act of retaliation") (citing Black v. Lane, 22 F.3d 1395, 1407 (7th Cir. 1994)).  In the absence of any evidence supporting Plaintiff's FMLA retaliation claim, there is no material issue of fact as to whether Plaintiff filed his claim within the three-year FMLA limitations period.[10]

Plaintiff does not submit evidence of any other discrete acts by ACE that could form the basis of a timely claim under the FMLA.  His FMLA claims are time-barred.

### D.    Plaintiff's Abandoned Claims

Plaintiff's Amended Complaint asserts additional claims for hostile work environment, intentional infliction of emotional distress, and violations of the United States and New Jersey constitutions.  Plaintiff has expressly abandoned those claims, and this Court therefore grants Defendant's motion for summary judgment as to those claims.

---

[10] Because Plaintiff does not submit any evidence in support of his claim that ACE's November 21, 2005 conduct was retaliatory regarding his FMLA leave, the Court need not consider the issue of whether a retaliation claim is necessarily a willful violation of the FMLA and therefore subject to statute's longer three-year limitations period. Compare Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist., No. 07-235, 2008 U.S. Dist. LEXIS 1417, at *19 (N.D.N.Y Jan. 7, 2008) ("A claim of retaliation is certainly a 'willful' violation and may be subject to the three-year statute of limitations."), with McCully v. Am. Airlines, Inc., 695 F. Supp. 2d 1225, 1251 (N.D. Okla. 2010) ("it is unclear whether the two or three year limitation period would apply to a retaliation claim").

IV.     **CONCLUSION**

For the reasons stated above, the Court grants Defendant's motion for summary judgment

dismissing Plaintiff's Amended Complaint.[11]  An appropriate order shall be entered.


Dated:  9/28/10                                          /s/ Robert. B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge

---

[11] The parties present arguments and evidence regarding the substance of Plaintiff's ADA, NJLAD, and FMLA
claims.  Because this Court finds that Plaintiff's claims are time-barred, it does not address the substantive merits of
Plaintiff's underlying claims.